**Lois Bryant WAGNER (now Leffler), Appellant,**

v.

**Dale Leroy WAGNER, Appellee.**

Nos. 90–CA–97–S, 90–CA–542–S.

Court of Appeals of Kentucky.

Jan. 17, 1992.

Rehearing Denied March 22, 1992.

Discretionary Review Granted by Supreme Court June 26, 1991.

Glen S. Bagby, Brock, Brock & Bagby, Lexington, for appellant.

Edward E. Dove, Lexington, James Westenhoeffer, Richmond, for appellee.

Before HOWERTON, HUDDLESTON and McDONALD, JJ.

HOWERTON, Judge.

This case is on remand from the Kentucky Supreme Court for consideration on the merits. Through a clerical error on the part of the circuit court clerk, a videotape of the proceeding to be appealed was omitted from the record on appeal. *See* CR 98. Another panel of this Court declined to rule on the merits of the case based upon an insufficient record on appeal. A petition for rehearing was denied and discretionary review was granted. The Supreme Court reversed this Court; subsequently the motion to supplement the record with the videotape was granted and the appeal resubmitted for a determination on the merits.

We have reviewed the arguments of the parties and the videotape of the hearing held December 13, 1989. Because we believe the trial court erred in terminating the parties' agreement when there was no evidence that termination was contemplated by the parties, and because the trial court acted arbitrarily in awarding to Dale Wagner the priority to purchase season tickets, we reverse and remand.

Lois Wagner Leffler and Dale Wagner separated in 1976 and were divorced in 1977, after 24 years of marriage. Their

children were grown and married. The parties filed their petition for dissolution *pro se,* but subsequently retained joint counsel. The petition averred that the parties did "not own marital property subject to the division of the Court." The parties had already divided the household goods and had agreed that Leffler could initially have the equity of $4,000 in the marital residence to use as a down payment on another house. She was to repay Wagner his $2,000 at a rate of $35 per month until paid. The parties agree this has been done.

During the marriage, the parties obtained priority to purchase two season tickets to the University of Kentucky basketball games each fall. At separation, the parties agreed that these would be split each year, with each party getting both tickets for one-half the home games, or some variation thereof. The ticket order form continued to come to Leffler's residence in Wagner's name. After Leffler remarried, Wagner had the address changed so that the form and tickets would be sent directly to him. When Wagner received the order form, he would photocopy this for Leffler, and she would send him a check for one-half the amount. This arrangement apparently went on smoothly from the 1976–77 season until 1988, when Leffler misplaced the ticket order form and was 10 days late sending her check to Wagner. He then refused to honor the agreement. The following year, Leffler sent her check to Wagner early, but it was returned, along with a note from Wagner saying that their "age old agreement" was not a lifetime commitment and he was terminating it. Leffler sought to have the trial court enforce the agreement and direct Wagner to deliver one-half the tickets as before.

At the hearing, both parties testified that they had agreed to divide the tickets, although Wagner stated he did not feel he had any legal obligation to do so. Leffler testified that her understanding was that the arrangement would continue *ad infinitum.*

Although the orders of December 14, 1989, and February 13, 1990, characterized the agreement as a "ticket-sharing arrangement," the trial judge indicated it was an enforceable agreement when he stated, "I don't think there is any doubt that you can enforce it; that's where they made it and followed it.... I think that Mr. Wagner agreed to it, and they followed it." The trial court ruled that Wagner had to share the tickets through the 1991–92 season and then the tickets would be his. The judge appeared to base his ruling on the fact that divorce should be a termination of the relationship and that 15 years is long enough for something like this to go on. He gave no reason for awarding the priority to purchase tickets to Wagner over Leffler.

Now Leffler asserts that the trial court erred in ordering that the agreement would terminate after three more seasons without any evidence from the parties that they had contemplated or discussed any time frame for termination of the agreement. We agree and further hold that the trial court abused its discretion in awarding the tickets solely to Wagner.

Leffler first sought to have the court direct Wagner to deliver one-half the tickets as before, and only alternatively mentioned reopening the judgment as a means of accomplishing this. Therefore, we do not believe the restrictions of CR 60.02 apply.

There were no findings concerning termination or the intent of the parties. The court appeared to act upon a policy basis that the parties should not continue to be tied to each other after a divorce. The court in effect supplied a term to the agreement that the parties themselves did not address, and it was error to do so. *White v. Winchester Land Development Corp.,* Ky.App., 584 S.W.2d 56, 64 (1979).

Once the court terminated the agreement, it arbitrarily awarded the priority to Wagner, leaving Leffler to "scout around" for more tickets. We do not impute any ill motive in the court's action. However, there was absolutely no reason to favor Wagner with the priority over Leffler.

The agreement to divide the tickets annually came about during the bargaining

process at separation, and it may well be that had the tickets not been divided, some other settlement would have been reached as to the division of other marital property.

■ The priority to purchase tickets was joint property. There was absolutely no evidence that the tickets were any more Wagner's than Leffler's; it was merely fortuitous that the priority had been put in his name, and thus he had the power to call off the agreement. His actions precipitated the present proceedings. For this reason, we decline to apply the Statute of Frauds (KRS 371.010(7)) to this action.

The tickets clearly had value, and it was an abuse of discretion to end the agreement and reward Wagner for his repudiation without some exchange of value to Leffler. While we tend to agree with the trial judge that it would be good to end the arrangement, the order of the trial court is nevertheless reversed and the action is re-manded with directions that the agreement be enforced as originally contemplated.

In the event the parties wish to terminate the agreement, we simply suggest that one of the parties offer to buy the other party's interest or sell his or her interest in the tickets at a price set by the offeror. If the offeree does not wish to accept that price for his or her share, then he or she must pay that same price to buy out the offeror, who shall be bound to sell for that amount.

All concur.